UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DORCHEN/MARTIN ASSOCIATES, INC.,

    Plaintiff,

v.

Case Number 13-10588
Honorable Thomas L. Ludington

THE BROOK OF BOYNE CITY, INC. et al.,

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Does the fact that a copyright holder brought an infringement claim in a prior case preclude it from doing so in this case? The answer is plain. The operative facts constituting the alleged infringement are different. Six of the seven alleged infringers are different. In short, the causes of action are different. The copyright holder's claim is not barred by res judicata.

**I**

**A**

Plaintiff Dorchen/Martin Associates, Inc., provides comprehensive architectural consulting services for hire. In 2001, Plaintiff entered into a contract with DeWitt Builders, AZ. Plaintiff agreed to create architectural and structural plans for the construction of a retirement community known as "The Brook" (since renamed as "The Brook of Roscommon") to be built in Roscommon, Michigan.

Since this contract was executed, seven "Brook" retirement communities have opened in Michigan (with at least one more on the way).

**B**

The Brook's business structure (more precisely, its series of independent structures) is straightforward. Behind the operation are three natural persons — James DeWitt, Diane Friedriechsen, and William Carey. *See* Defs.' Mot. to Dismiss 12.

When they plan to develop a new property, DeWitt, Friedriechsen, and Carey first form a limited liability company. *See* Defs.' Reply 3. For example, the "DFC of Gaylord, LLC" was formed to acquire the land and develop "The Brook of Gaylord" retirement community. (DFC, of course, represents the first letter of the three principals' surnames.)

DeWitt, Friedriechsen, and Carey then incorporate a "The Brook of" corporation. Once the particular retirement community has been constructed, the corporation leases the property from the LLC and operates it. For example, "The Brook of Gaylord, Inc." was incorporated to lease "The Brook of Gaylord" facility from DFC of Gaylord, LLC, and operate that property.

Thus, a rigidly compartmentalized operation, the seven properties are organized as a series of independent businesses. Here's how it worked in practice.

**C**

In 2003, The Brook of West Branch, Inc., was incorporated to operate a new retirement community, "The Brook of West Branch," to be built in West Branch, Michigan.[1] DeWitt Builders was the general contractor on the project. Plaintiff was hired to prepare the architectural and structural plans for the facility, endeavoring to make them "as identical as possible, subject to local site conditions," as the Roscommon plan.

---

[1] It is not clear whether an LLC was formed for this particular property.

The following year, The Brook of Houghton Lake, Inc., was incorporated to operate another new retirement community, "The Brook of Houghton Lake."[2] Again, DeWitt Builders was the general contractor on the project. And again, Plaintiff was hired to design architectural and structural plans for the facility with the goal of making them as similar as possible to the Roscommon plans. It is these plans that are at the heart of the dispute.

**D**

The Houghton Lake plans specify Plaintiff is the author and "the subject matter contained therein is proprietary and not to be used or reproduced without the written permission of [Plaintiff]." Plaintiff created the plans in 2004. Plaintiff did not, however, immediately register them with United States Copyright Office.

Five years passed.

**E**

In May 2009, DFC of Cheboygan, LLC was formed to acquire land and develop yet another retirement community, "The Brook of Cheboygan." The same month, The Brook of Cheboygan, Inc., was incorporated to lease the property and operate it.

But unlike for the construction of the Brooks of Roscommon, West Branch, and Houghton Lake, Plaintiff was not hired to design architectural and structural plans for The Brook of Cheboygan.

Nevertheless, Plaintiff learned of the planned construction. In September 2009, it sent a letter to Mr. DeWitt asserting that any use of Plaintiff's plans to build another facility without permission would be copyright infringement.

Mr. DeWitt did not respond; instead, Mr. Carey did. He explained that he was "academically" interested in Plaintiff's assertion it held "all copy and use rights" in its Houghton

---

[2] Again, it is not clear whether an LLC was formed for this particular property.

Lake plans. But, he continued, while Plaintiff's work on the other facilities was appreciated, the Brook intended to "move forward aggressively with [its] building plans in Cheboygan."

## F

True to its word, the Brook then proceeded with The Brook of Cheboygan project. It retained Practical Engineers, Inc. to produce architectural plans for the facility. But Practical did not create new plans; instead, it simply reproduced Plaintiff's plans. Practical wrote to the Cheboygan County Planning Office, explaining: "The Brook plans you have are for one of the other facilities. While the building floor plan is identical to the proposed facility, we will submit a drawing with the correct north arrow on the drawings." Practical then submitted a plan that was identical to the '432 copyright, except that the North arrow was redrawn by hand in the opposite direction.

## G

A short time later, Plaintiff registered the Houghton Lake plan with the Copyright Office, receiving Certificate of Registration VA 1–688–432 ("the '432 copyright"), with an effective date of October 9, 2009.

## H

Plaintiff responded by filing a copyright infringement action ("Brook of Cheboygan litigation"). *See* Compl., *Dorchen/Martin Assoc., Inc. v. Brook of Cheboygan, Inc.*, No. 11–10561 (E.D. Mich. Feb. 11, 2011). The complaint named two defendants: The Brook of Cheboygan, Inc., and Practical Engineers, Inc.

## I

About this time, DeWitt, Friedriechsen, and Carey decided to prepare to build a property in Boyne City. In late January 2011, they formed DCF of Boyne City, LLC, and incorporated

The Brook of Boyne City, Inc. (There is no evidence, however, that the plans contained in the '432 copyright were copied by either of these entities at this time.)

**J**

In lieu of answering the complaint, the defendants in the Brook of Cheboygan litigation moved to dismiss. The motion was granted in January 2012, but Plaintiff was given leave to amend its copyright claim to plead it with sufficient particularity. *Dorchen/Martin*, 838 F. Supp. 2d 607 (E.D. Mich. 2012).

Plaintiff filed an amended complaint on February 1, 2012.

**K**

DeWitt, Friedriechsen, and Carey, notwithstanding the pending litigation against one of their corporations (The Brook of Cheboygan, Inc.), began preparations for another Brook facility in Gaylord, Michigan. They formed DCF of Gaylord, LLC, and incorporated The Brook of Gaylord, Inc. (Again, there is no evidence that the plans contained in the '432 copyright were copied by either of these entities at this time.)

With a use variance request dated February 16, 2012, DCF of Gaylord, LLC requested that the City of Gaylord, Michigan approve a variance for the construction of a "senior independent living" property. There is no evidence that the application included a copy of the proposed plan.

**L**

In short, the present record does not disclose when DCF of Boyne City, LLC, or The Brook of Boyne City, Inc., or both, first made a copy of the '432 copyright (if at all). Likewise, it does not disclose when DCF of Gaylord, LLC, or The Brook of Gaylord, Inc., or both, first made a copy of the '432 copyright (if at all).

Instead, the record simply discloses that The Brook of Boyne City was completed in mid-2012. And The Brook of Gaylord was completed later the same year.

## M

While this was transpiring, the defendants in the Brook of Cheboygan litigation moved for summary judgment. They argued that the '432 copyright was not enforceable because, among other reasons, it was a work made for hire, a derivative work, and obtained through misrepresentations to the copyright office. The motion was denied. *Dorchen/Martin*, 2012 WL 4867608 (E.D. Mich. Oct. 15, 2012).

The defendants then moved for partial summary judgment on the availability of statutory damages and attorney's fees. The motion was granted in January 2013 because the defendants had copied the plan before the effective date of the '432 copyright (indeed, they had submitted the plan to the Cheboygan facility to the local planning authority before the copyright's effective date). *Dorchen/Martin*, 2013 WL 140790 (E.D. Mich. Jan. 11, 2013).

## N

Also in January 2013, and less than three months before trial was set to begin, Plaintiff moved for leave to amend its complaint to add two counts and seven defendants to the action. Plaintiff asserted that both The Brook of Boyne City and The Brook of Gaylord retirement communities infringe upon the '432 copyright and that Plaintiff was previously unaware of these facilities. The motion was denied. *Dorchen/Martin*, 2013 WL 147508 (E.D. Mich. Jan. 14, 2013). In part, the order explained:

> Plaintiff knew of the Boyne City facility at least as early as February 2012, and the Gaylord facility was already under construction by the first week of October [2012] . . . .
>
> The trial is less than three months away, discovery has been closed for more than four, and at this point Defendants are relatively well-prepared for trial. To add

> seven new Defendants and two new claims would necessarily require the trial date to be adjourned and discovery to be reopened. Such a situation would dramatically prejudice Defendants.

*Id*. at 4 (internal citations omitted).

## O

In February 2013, the defendants in the Brook of Cheboygan litigation made an offer of judgment pursuant to Federal Rule of Civil Procedure 68, offering $25,000 to settle the case. Plaintiff accepted.

A judgment was entered, providing in part: "In keeping with the purpose of Rule 68 of the Federal Rules of Civil Procedure to encourage settlement, neither defendants' Offer of Judgment, nor this Judgment entered thereon, may be construed as an admission (i) of liability on the part of any defendant, (ii) that any allegations of the complaint are true, or (iii) that plaintiff has suffered any damage."

## P

While this was transpiring, Plaintiff initiated this suit in February 2013 alleging that The Brook of Boyne City and The Brook of Gaylord retirement communities infringe on the '432 copyright.

The complaint names six entities and one natural person as defendants. They are: The Brook of Boyne City, Inc.; DFC of Boyne City, LLC; The Brook of Gaylord, Inc.; DFC of Gaylord, LLC; AzTech, Inc.; Practical Engineers, Inc.; and Brian Ross. (Only Practical was a defendant in the Brook of Cheboygan litigation.)

Q

In lieu of answering, Defendants move to dismiss the complaint as barred by the doctrine of claim preclusion. Alternatively, Defendants move to bar Plaintiff's claim for statutory damages and attorney fees.

II

Defendants' motion to dismiss, somewhat confusedly, asserts that it is brought pursuant to both Federal Rule of Civil Procedure 12 and 56. Their reply, however, clarifies that it is the latter. *See* Defs.' Reply 1 n.1. Plaintiff, for its part, does not object to the motion being treated as one for summary judgment. And so that is how it is treated.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

III

A

The doctrine of res judicata "was known in Roman law, but its appearance in early English law probably had Germanic roots." Eugene F. Scoles et al., *Conflict of Laws* § 24.1 (4th

ed. 2004). Today, the doctrine in American law "includes two separate concepts — issue preclusion and claim preclusion." *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 745 n.4 (6th Cir. 2002). Defendants' motion, as noted, asserts the latter.

An affirmative defense, claim preclusion generally prohibits "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) ("Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar."); *see generally* Jack Friedenthal et al., *Civil Procedure* 646 (4th ed. 2005) ("[Claim preclusion] is traditionally divided into two closely related doctrines, 'merger' and 'bar.' . . . When a claimant wins a judgment, all possible grounds for the cause of action asserted by the claimant are said to be merged into that judgment and are not available for further litigation. A party who loses the first suit is said to be barred by the adverse judgment from ever raising the same cause of action again, even if the party can present new grounds for recovery.").

**B**

To determine whether the successive litigation is based on "the very same claim," *id.*, federal courts look to the law of the court rendering the prior judgment. *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 Fed. App'x. 994, 998 (6th Cir. 2009) (citing *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999)).

Here, the prior judgment was rendered by this Court. Federal law therefore governs the preclusive effect of that judgment.

## C

Under federal law, to establish the defense of claim preclusion a party must prove four elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (citing *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).

Here, the final element is dispositive. So it is taken up first.

### 1

For this element — identity of the causes of action — the Sixth Circuit has adopted the transactional test of the *Restatement (Second) of Judgments*. *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir. 1996) (quoting *Restatement (Second) Judgments* § 24 (1982)). Under this test, whether the causes of action are the same depends on whether the successive litigation arises out of the same "transaction, or series of connected transactions, out of which the [prior] action arose." *Id.*; *see In re Paige*, 610 F.3d 865, 872 (5th Cir. 2010) (discussing transactional test).

"Transaction," the *Restatement* explains, "connotes a natural grouping or common nucleus of operative facts." *Restatement* § 24 cmt. b; *see also In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000) ("The critical issue under this determination is whether the two actions under consideration are based on the same nucleus of operative facts." (quotation marks omitted)). Relevant factors to consider include "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Restatement* § 24 cmt. b.

Here, the operative facts in the Brook of Cheboygan litigation do not share a common nucleus with this litigation. They are separated by both time and space.

To establish a copyright infringement claim, two elements must be proven: (1) the plaintiff has ownership of a valid copyright, and (2) the defendant copied constituent elements that are original. *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co., Inc.*, 499 U.S. 340, 361 (1991).

Here, the facts relevant to the ownership of the copyright are the same — Plaintiff owns the '432 copyright. But the facts relevant to the copying are completely different. More precisely, they are completely different for at least six of the seven Defendants. And the seventh Defendant (Precise Engineering) does not establish that the operative facts relevant to the claims against it are the same.

**a**

First, years separate the operative facts. The Sixth Circuit instructs that in the particular context of architectural plans infringement commences not on the starting of construction, but on "the making of infringing plans." *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 281 (6th Cir. 1988). Put differently, "the infringing act [is] the making of infringing plans, and the construction of the houses according to those infringing copies merely multiplie[s] the damages attributable to the infringing act." *Id*.

In the Brook of Cheboygan litigation, Plaintiff's copyright was infringed in 2009, when The Brook of Cheboygan, Inc., and Practical Engineers, Inc., copied the '432 plans to construct The Brook of Cheboygan retirement community.

In this litigation, Plaintiff alleges that its copyright was infringed in late 2011 or 2012, when different Defendants copied the '432 plans to construct The Brook of Boyne City and The Brook of Gaylord retirement communities.

For at least four of these Defendants — specifically, The Brook of Boyne City, Inc.; DFC of Boyne City, LLC; The Brook of Gaylord, Inc.; and DFC of Gaylord, LLC — the infringement could not have occurred prior 2011 or 2012. The Brook of Boyne City, Inc. and DFC of Boyne City, LLC did not exist until 2011. And The Brook of Gaylord, Inc.; and DFC of Gaylord, LLC did not exist until 2012.

And the remaining three Defendants — AzTech, Inc.; Practical Engineers, Inc.; and Brian Ross — offer no evidence in support of their motion for summary judgment demonstrating either that they copied Plaintiff's plans prior to this time or that they did not do so at all. (Indeed, they attach no evidence whatsoever in support of their motion.)

Moreover, the facts giving rise to this litigation appear to postdate the filing of the complaint in the Brook of Cheboygan litigation. *See, e.g.*, *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006) ("[The plaintiff's] cannot be barred by res judicata, because those alleged actions had not yet occurred at the time she filed the first . . . suit. The district court's dismissal of these claims on res judicata grounds was erroneous. Simply put, [the plaintiff] could not have asserted a claim that [she] did not have at the time." (quotation marks omitted)). As the Sixth Circuit observes, it is farcical to assert that if a plaintiff sues for one instance of copyright infringement, it is barred from suing for subsequent instances of infringement by the same defendant (much less different ones). *Id.* Enforcing a copyright does not destroy the holder's right to protect it in the future — it vindicates it.

**b**

Space also separates the operative facts. In the Brook of Cheboygan litigation, Plaintiff alleged that its copyright was infringed in Cheboygan, Michigan. That is where one of the defendants was located, where the copied plans were submitted, and where they were used.

In this litigation, Plaintiff alleges that its copyright was infringed in Boyne City, Michigan (about 50 miles southwest of Cheboygan) and Gaylord, Michigan (about 50 miles south of Cheboygan). That is where four of the defendants are located, where the copied plans were submitted, and where they were used.

c

In sum, Defendants offer no evidence establishing that the copying shares a common nucleus of operative facts as the Brook of Cheboygan litigation. They are not entitled to summary judgment based on the affirmative defense of claim preclusion.

2

In passing, it should also be noted that the six of the seven Defendants in this case cannot establish the second element of claim preclusion — that the case involves the same parties or their privies as the prior case. (Practical Engineers, which was a party to the prior case, can.)

First, only one of the seven Defendants (Practical Engineers) was actually a party to the prior litigation. Thus, for the other six Defendants to establish that they are entitled to the affirmative defense of claim preclusion, they must establish privity.

a

"Privity under federal law means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *J.M.S. & Assoc., Inc. v. Eastman Kodak Co.*, 156 F.3d 1230 (6th Cir. 1998) (quotation marks omitted) (quoting *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc*., 973 F.2d 474, 481 (6th Cir. 1992)). Here, Defendants expressly assert only the second ground; they do not establish it.

**i**

As a threshold matter, more than 100 years ago the Supreme Court observed: "A corporation is constituted . . . of all its stockholders; but it has a legal existence separate from them, rights and obligations separate from them." *Doctor v. Harrington*, 196 U.S. 579, 586 (1905); *see also Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 26 (2004) (Thomas, J., concurring) (noting that a "corporation's separate legal existence from shareholder must be respected").

It is likewise a matter of black-letter law that "[c]orporations are treated as entities separate from their officers, directors, and shareholders for purposes of preclusion just as for other purposes." 18A Charles Alan Wright et al., *Federal Practice & Procedure* § 4460 (2d ed. 2002). One exception to this rule is that "directors, officers, and shareholders may be in privity with a corporation and thereby assert a res judicata defense if they are named as defendants solely in their capacity as directors, officers, and shareholders." *United States v. Gurley*, 43 F.3d 1188, 1197 (8th Cir. 1994) (quotation marks omitted) (quoting *Oglala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1410 n.3 (8th Cir.1983)).

Here, DeWitt, Friedriechsen, and Carey were not named parties to the Brook of Cheboygan litigation. And they are not named parties to this litigation. There is no suggestion that the corporations and LLCs which they own are mere alter egos which may be disregarded. There is no suggestion, for example, that Carey, DeWitt, or Friedriechsen are personally liable for the debts of The Brook of Cheboygan, Inc., including the judgment entered against that entity in the Brook of Cheboygan litigation. Nor is there any suggestion that Carey, DeWitt, or Friedriechsen are personally liable for the debts of any of the named Defendants in this case. In

short, their entities retain independent corporate existence. Simply because they have the same owners does not mean that they are in privity.

ii

It is likewise a matter of black-letter law that "[c]orporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion under this analysis where there is identity of control." *Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1405 (9th Cir. 1993). Wright & Miller observe:

> Relationships between a parent corporation and its subsidiaries should generally be regulated by the same rules as apply to other shareholders. The parent-subsidiary relationship does not of itself establish privity. Preclusion is particularly appropriate if the parent controlled litigation against a subsidiary, or brought or defended an action for the benefit of a subsidiary. If different subsidiaries are involved in successive litigation, however, extra care may be required in assaying the control relationships involved, particularly if there are independent interests.

Wright & Miller § 4460 (footnotes omitted).

In *Nordhorn*, for example, two companies (Ladish and HITCO) were subsidiaries of the same parent corporation in the early 1980s. 9 F.3d at 1404. Later, the parent-subsidiary relationship was dissolved. *Id*. A third party then brought suit against HITCO. *Id*. The parties settled, with the plaintiff agreeing to waive all claims that it had against HITCO. *Id*. The plaintiff then brought suit against Ladish. *Id*. The district court dismissed the suit on res judicata grounds. *Id*. The court of appeals reversed because Ladish and HITCO, explaining:

> Although the interests of Ladish and HITCO were aligned in the 1980s when they were marketing their related products to airline manufacturers, by the time of the HITCO litigation there was no relationship whatsoever. Ladish had no participation in or control over the HITCO lawsuit, and there is no indication that HITCO had any interest in Ladish's affairs or well-being during or after the lawsuit against HITCO.

*Id.* at 1405.

Here, the Brook's business structure is comprised of a number of free-standing entities. Each property is owned by a separate, independent LLC and operated by a separate, independent corporation. No top-down control or parent-subsidiary relationship exists between these entities. They are simply a number of self-contained companies, each of whom has an independent legal existence.

The benefit of this compartmentalization is plain — limited liability. By keeping them wholly independent, the owners shield one company's assets from the others' liabilities. The cost, however, is that the preclusive effect of the judgment is also limited.

Here, six Defendants cannot establish the second element of the affirmative defense of claim preclusion.

**b**

Arguing that privity does exist, Defendants assert that the corporate formalities should be disregarded. They write:

> The principals of The Brook of Cheboygan, Inc., are William Carey, James DeWitt, and Diane Friedriechsen. Defendants The Brook of Gaylord, Inc., DFC of Gaylord, LLC, The Brook of Boyne City, Inc. and DFC of Boyne City, LLC, are commonly owned and controlled by those same principals. Mr. Brian Ross, an individual defendant in the 2013 Action, is a principal of Practical Engineers, Inc., a corporate defendant in the 2011 Action. AzTech, Inc., a corporate defendant in the 2013 Action, was disclosed in the 2011 Action as 'DeWitt Builders AZ,' whose president is James M. DeWitt.

Defs.' Mot. to Dismiss ¶¶ 3–4, 5–6 (formatting and internal citations omitted).

As noted, however, Defendants do not suggest that the corporations themselves are alter egos — either of their respective owners or each other. They do not suggest, for example, that Carey, DeWitt, or Friedriechsen are personally liable for the debts of The Brook of Cheboygan, Inc. Nor do they suggest that Carey, DeWitt, or Friedriechsen are personally liable for the debts

of any of the named Defendants in this case. Nor do they suggest that any of the named Defendants this case can be held liable for The Brook of Cheboygan, Inc., or vice versa.

And Defendants offer no authority for the proposition that one wholly independent corporation (or LLC) is in privity with another wholly independent corporation (or LLC) because they share common owners.

The purpose of incorporation is to give an artificial entity legal existence different than that of its owners — and thereby limit the owners' liability. And the purpose of separate incorporation of multiple entities, as noted, is to shield one company from another's liabilities. The cost, however, is that the preclusive effect of the judgment is also limited. Aside from Practical, Defendants had no risk in the prior litigation. They can't use that litigation as a shield in this litigation.

**c**

In sum, Defendants are not entitled to summary judgment based on claim preclusion. And, for the reasons taken up next, they are not entitled to a declaration that Plaintiff is precluded from recovering statutory damages and attorney's fees.

**IV**

Section 504 of the Copyright Act provides that a copyright infringer may be held liable for either "the copyright owner's actual damages and any additional profits of the infringer" or "statutory damages." 17 U.S.C. § 504(a)(1)–(2). Section 505 provides that a court may award the prevailing party costs and "a reasonable attorney's fee." 17 U.S.C. § 505.

Section 412, however, circumscribes the scope of these remedies. *See Johnson v. Jones*, 149 F.3d 494, 504 (6th Cir. 1998) (discussing interplay between §§ 412, 504, and 505). It provides that "no award of statutory damages or of attorney's fees, as provided by sections 504

and 505, shall be made for — (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration." § 412(1) (formatting omitted). The section, the Sixth Circuit explains, "is designed to ensure that an infringer of an unpublished work will be subject to the punitive effects of §§ 504(c) and 505 only if the infringer had constructive notice that the work was protected by a valid copyright." *Jones*, 149 F.3d at 505.

Thus, a copyright holder cannot recover statutory damages or attorney fees if the "infringement 'commenced' before the copyright was registered." *Id*.

Here, the '432 copyright has an effective registration date of October 9, 2009. From the present record, it is unclear when the projects at issue, The Brook of Boyne City and The Brook of Gaylord retirement communities, first infringed on the '432 copyright. What is clear is that Defendants have not established through admissible evidence that their copying first occurred before this date (much less that no copying occurred at all).

As discussed above, the Sixth Circuit instructs that in the particular context of architectural plans infringement commences on "the making of infringing plans." *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 281 (6th Cir. 1988). That is, "the infringing act [is] the making of infringing plans, and the construction of the houses according to those infringing copies merely multiplie[s] the damages attributable to the infringing act." *Id*.

Here, Plaintiff alleges that its copyright was infringed in late 2011 or 2012, when Defendants copied the '432 plans to construct The Brook of Boyne City and The Brook of Gaylord retirement communities.

For at least four Defendants — specifically, The Brook of Boyne City, Inc.; DFC of Boyne City, LLC; The Brook of Gaylord, Inc.; and DFC of Gaylord, LLC — the infringement could not have occurred prior 2011 or 2012. The Brook of Boyne City, Inc. and DFC of Boyne

City, LLC did not exist until 2011. And The Brook of Gaylord, Inc.; and DFC of Gaylord, LLC did not exist until 2012.

And the remaining three Defendants — AzTech, Inc.; Practical Engineers, Inc.; and Brian Ross — offer no evidence in support of their motion showing that they copied Plaintiff's plans prior to this time. This is not to suggest that they cannot establish this (Practical Engineers in particular would seem to have an argument in this regard). But at present they have not done so. They are not entitled to summary judgment.

Against this conclusion, Defendants assert that their copying is merely "successive" to that at issue in the Brook of Cheboygan litigation and they are in privity with the defendants in that case. As noted, however, enforcing a copyright does not destroy that right — it vindicates it.

V

Accordingly, it is **ORDERED** that Defendants' motion to dismiss (ECF No. 5) is **DENIED**.

                                          s/Thomas L. Ludington
                                          THOMAS L. LUDINGTON
                                          United States District Judge

Dated: June 3, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 3, 2013.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS