UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DORCHEN/MARTIN ASSOCIATES, INC.,

        Plaintiff,                                Case No. 13-cv-10588

v                                                      Honorable Thomas L. Ludington

THE BROOK OF BOYNE CITY, INC. a
Michigan Corporation; DFC OF GAYLORD,LLC,
a Michigan LLC; THE BROOK OF BOYNE CITY,
INC. a Michigan Corporation; DFC OF BOYNE
CITY LLC, a Michigan LLC; PRACTICAL
ENGINEERS, INC. a Michigan Corporation;
BRIAN ROSS, an individual; AZTECH, INC. a
Michigan Corporation,

        Defendants.

_____/

**ORDER DENYING DEFENDANTS MOTION TO STRIKE ANSWER TO
COUNTERCLAIM AND DENYING DEFENDANT PRACTICAL
ENGINEERS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

On February 12, 2013, Plaintiff Dorchen/Martin Associates filed a complaint against Defendants alleging copyright infringement of architectural plans created by Plaintiff. ECF No. 1. After the Court denied Defendants' motion to dismiss, Defendants timely filed an answer and counterclaim against Plaintiff on June 17, 2013. ECF No. 10.

Defendants then filed two motions with the Court. First, on July 22, 2013, Defendants filed a motion to strike Plaintiff's answer to the counterclaims as untimely or, in the alternative, to require Plaintiff to respond. ECF No. 20. Because the delay in filing the answer did not prejudice Defendants or the judicial process, Defendants' motion to strike Plaintiff's answer to the counterclaim will be denied. Furthermore, Defendants' motion to require Plaintiff to file a

responsive pleading is denied because Plaintiff's answer meets the requirements of Federal Rule of Civil Procedure 8(b).

Second, Defendant Practical Engineers filed a motion to compel Plaintiff to answer four interrogatories. Because Plaintiff Dorchen/Martin Associates has adequately answered these interrogatories, Defendant Practical Engineers' motion to compel will be denied.

I

Plaintiff Dorchen/Martin Associates, Inc., provides comprehensive architectural consulting services for hire. In 2001, Plaintiff entered into a contract with DeWitt Builders, AZ. Plaintiff agreed to create architectural and structural plans for the construction of a retirement community known as "The Brook" (since renamed as "The Brook of Roscommon") to be built in Roscommon, Michigan. Since this contract's execution, seven "Brook" retirement communities have opened in Michigan (with at least one more on the way).

The Brook's business structure (more precisely, its series of independent structures) is straightforward. Behind the operation are three natural persons — James DeWitt, Diane Friedriechsen, and William Carey. *See* Defs.' Mot. to Dismiss 12.

When they plan to develop a new property, DeWitt, Friedriechsen, and Carey first form a limited liability company. *See* Defs.' Reply 3. For example, the "DFC of Gaylord, LLC" was formed to acquire the land and develop "The Brook of Gaylord" retirement community.

DeWitt, Friedriechsen, and Carey then incorporate a "The Brook of" corporation. Once the particular retirement community has been constructed, the corporation leases the property from the LLC and operates it. For example, "The Brook of Gaylord, Inc." was incorporated to lease "The Brook of Gaylord" facility from DFC of Gaylord, LLC, and operate that property.

In 2003, The Brook of West Branch, Inc., was incorporated to operate a new retirement community, "The Brook of West Branch," to be built in West Branch, Michigan. DeWitt Builders was the general contractor on the project. Plaintiff was hired to prepare the architectural and structural plans for the facility, endeavoring to make them "as identical as possible, subject to local site conditions," as the Roscommon plan.

The following year, The Brook of Houghton Lake, Inc., was incorporated to operate another new retirement community, "The Brook of Houghton Lake." Again, DeWitt Builders was the general contractor on the project. And again, Plaintiff was hired to design architectural and structural plans for the facility with the goal of making them as similar as possible to the Roscommon plans. It is these Houghton Lake plans that are at the heart of the dispute.

The Houghton Lake plans specify Plaintiff is the author and "the subject matter contained therein is proprietary and not to be used or reproduced without the written permission of [Plaintiff]." Plaintiff created the plans in 2004, but did not immediately register them with United States Copyright Office.

Five years later, in May 2009, DFC of Cheboygan, LLC was formed to acquire land and develop yet another retirement community, "The Brook of Cheboygan." The same month, The Brook of Cheboygan, Inc., was incorporated to lease the property and operate it.

But unlike for the construction of the Brooks of Roscommon, West Branch, and Houghton Lake, Plaintiff was not hired to design architectural and structural plans for The Brook of Cheboygan.

Nevertheless, Plaintiff learned of the planned construction. In September 2009, it sent a letter to Mr. DeWitt asserting that any use of Plaintiff's plans to build another facility without approval would constitute copyright infringement.

Mr. DeWitt did not respond; instead, Mr. Carey did. He explained that while Plaintiff's work on the other facilities was appreciated, the Brook intended to "move forward aggressively with [its] building plans in Cheboygan."

The Brook then proceeded with The Brook of Cheboygan project. It retained Practical Engineers, Inc. to produce architectural plans for the facility. Practical did not create new plans; instead, it simply reproduced Plaintiff's plans. Practical wrote to the Cheboygan County Planning Office, explaining: "The Brook plans you have are for one of the other facilities. While the building floor plan is identical to the proposed facility, we will submit a drawing with the correct north arrow on the drawings." Practical then submitted a plan that was identical to the '432 copyright, except that the North arrow was redrawn by hand in the opposite direction.

A short time later, Plaintiff registered the Houghton Lake plan with the Copyright Office, receiving Certificate of Registration VA 1–688–432 ("the '432 copyright"), with an effective date of October 9, 2009.

## A

Plaintiff filed a copyright infringement action in February 2011 ("Brook of Cheboygan litigation"). *See* Compl., Dorchen/Martin Assoc., Inc. v. Brook of Cheboygan, Inc., No. 11–10561 (E.D. Mich. Feb. 11, 2011). The complaint named two defendants: The Brook of Cheboygan, Inc., and Practical.

In January 2013, less than three months before trial was set to begin, Plaintiff moved to amend its complaint to add two counts and seven additional defendants to the action. Plaintiff asserted that both The Brook of Boyne City and The Brook of Gaylord retirement communities infringed upon the '432 copyright. These Brook communities had started construction around the

- 4 -

same time the Brook of Cheboygan litigation had begun. Plaintiff's motion to amend its complaint was denied.

After two years of litigation, in February 2013, the defendants in the Brook of Cheboygan litigation made an offer of judgment pursuant to Federal Rule of Civil Procedure 68, offering $25,000 to settle the case. Plaintiff accepted. A judgment was entered, providing in part: "In keeping with the purpose of Rule 68 of the Federal Rules of Civil Procedure to encourage settlement, neither defendants' Offer of Judgment, nor this Judgment entered thereon, may be construed as an admission (i) of liability on the part of any defendant, (ii) that any allegations of the complaint are true, or (iii) that plaintiff has suffered any damage."

**B**

Around the time the Brook of Cheboygan litigation began, DeWitt, Friedriechsen, and Carey decided to build a property in Boyne City. In late January 2011, they formed DCF of Boyne City, LLC, and incorporated The Brook of Boyne City, Inc.

In addition, DeWitt, Friedriechsen, and Carey began preparations for another Brook facility in Gaylord, Michigan. They formed DCF of Gaylord, LLC, and incorporated The Brook of Gaylord, Inc.

With a use variance request dated February 16, 2012, DCF of Gaylord, LLC requested that the City of Gaylord, Michigan approve a variance for the construction of a "senior independent living" property.

As explained above, Plaintiff attempted to amend its complaint in the Brook of Cheboygan litigation to include The Brook of Boyne City and The Brook of Gaylord as defendants. After the Court denied Plaintiff's motion to join the two in the Brook of Cheboygan litigation, Plaintiff initiated this suit against The Brook of Boyne City and The Brook of Gaylord.

Specifically, the complaint names six entities and one natural person as defendants: (1) The Brook of Boyne City, Inc.; (2) DFC of Boyne City, LLC; The Brook of Gaylord, Inc.; (3) DFC of Gaylord, LLC; (4) AzTech, Inc.; (5) Practical Engineers, Inc.; and (6) Brian Ross.

## II

Defendants first argue that Plaintiff's response to the counterclaim should be stricken because it was untimely. In the alternative, Defendants argue that Plaintiff should be ordered to plead responsively to the allegations.

Defendants filed their counterclaim on June 17, 2013. ECF No. 10. Federal Rule of Civil Procedure 12(a) requires a party to answer a counterclaim within 21 days after being served with the pleading that states the counterclaim, plus three days for mailing. Fed. R. Civ. P. 12(a)(1)(B). Accordingly, Plaintiff's answer to the counterclaim was due on July 11, 2013. Plaintiff did not, however, file its answer to Defendants' counterclaim by the deadline; rather, Plaintiff filed its answer six days late on July 17, 2013. ECF No. 19. Plaintiff did not seek the Court's leave to file an untimely response.

The authority to grant deadline extensions derives from the Court's equitable powers, but a district court "should not carte blanch grant motions for extensions of time . . . ." *United States v. Thompson*, 82 F.3d 700, 702 (6th Cir. 1996). Federal Rule of Civil Procedure 6(b) allows the Court to extend the time to perform an act "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Because Plaintiff filed its answer to the counterclaim after the deadline had passed, the Court can grant the extension only if Plaintiff's failure to act resulted from excusable neglect. *Id*.

The determination of whether excusable neglect exists requires the Court to balance the following five factors: (1) the danger of prejudice to the non-moving party; (2) the length of the

delay and the potential impact on judicial proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the moving party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (*citing Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The Court should not consider the question of excusable neglect in isolation, "but by 'taking account of all relevant circumstances surrounding the party's omission.'" *Id*. at 523 (*quoting Pioneer*, 507 U.S. at 395).

Here, the first two factors in the balancing test favor Plaintiff. First, the delay in filing the answer to the counterclaim was short—only six days. Second, Defendants have not asserted prejudice as a result of the delay. In fact, Defendants initiated discovery after the answer deadline had passed. Pl.'s Resp. 5. Plaintiff's short delay in answering the counterclaim did not prejudice Defendants.

The third and fourth factors in the balancing test, however, favor Defendants. Thirdly, the sole reason asserted by Plaintiff in support of its failure to timely file its answer is clerical error. Instead of noting the correct deadline, "the response date was *inadvertently* noted for July 17, 2013." Pl.'s Resp. 4, ECF No. 22 (emphasis added). On this point, the Supreme Court has stated that "inadvertence . . . do[es] not usually constitute 'excusable neglect.'" *Pioneer*, 507 U.S. at 392. Fourth, Plaintiff's failure to file a timely answer was within its control. Therefore, the fact that Plaintiff inadvertently noted the wrong response date does not support a finding of excusable neglect.

Finally, although Plaintiff's own inadvertence caused the delay, the Court is satisfied that Plaintiff acted in good faith when filing the answer to the counterclaim late. After Defendants' counsel sent Plaintiff a reminder that the deadline had passed, Plaintiff filed its answer about

three hours later that same evening. Defs.' Mot. to Strike 1, ECF No. 20. There is no suggestion that Plaintiff attempted to gain an unfair advantage or delay the proceedings by filing its answer late.

Given the strong preference for deciding cases on their merits, and especially in light of the lack of prejudice to the Defendants, the Court accepts Plaintiff's tardy answer to the counterclaim.

Next, Defendants seek to require Plaintiff to fairly respond to the substance of the counterclaim allegations or deem them admitted. Rule 8 of the Federal Rules of Civil Procedure provides for only three possible responses to allegations contained in a civil complaint: (1) admit the allegations; (2) deny the allegations; or (3) state that there is insufficient knowledge or information to form a belief about the truth of the allegations. Fed. R. Civ. P. 8(b)(1)-(5). A denial "must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). Thus, "[a]nswers that neither admit nor deny but simply demand proof of the plaintiff's allegations . . . are insufficient to constitute a denial." *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1264 (3d ed.). If a party fails to deny an allegation in a pleading to which a responsive pleading is required, the allegation is deemed admitted. Fed. R. Civ. P. 8(b)(6).

Here, Defendants assert that Plaintiff's responses to the counterclaim were evasive and did not comply with Rule 8(b). Defendants point specifically to Plaintiff's responses to paragraphs ten and twenty-eight in the counterclaim:

> **Counterclaim ¶ 10**
> 10.    Exhibit A is a true and correct copy of the March 9, 2001 facsimile transmittal, bearing Bates No. DM710-DM713.
>
> **Answer ¶ 10**
> 10.    In answer to Paragraph 10, Dorchen/Martin admits that Exhibit "A" appears to be a copy of a March 9, 2001 facsimile for reasons that such is true. However, Dorchen/Martin lacks information as to whether

> Exhibit "A" is a "true and correct" copy of that facsimile and is therefore unable to admit or deny the specific allegation as phrased, leaving the Counter Plaintiff(s) to their strictest proofs.
>
> **Counterclaim ¶ 28**
> 28. Dorchen/Martin knew that prior to preparation of the initial architectural plans for "The Brook of Roscommon" that it had inspected the living unit floor plans for Brighton Valley Independence Village.
>
> **Answer ¶ 28**
> 28. In answer to Paragraph 28, Dorchen/Martin admits that it did review other materials, including unit plans prior to work on The Brook of Roscommon for reasons that such is true.

Both of Plaintiff's responses are acceptable as pleaded because they fall within the responses permitted by Rule 8(b): admit, deny, or lack sufficient knowledge to form a belief about the truth of the allegation. Plaintiff admits those facts that are true and sufficiently denies the rest, and therefore "fairly respond[s] to the substance of the allegation[s]." Fed. R. Civ. P. 8(b)(2). Defendants' motion to require Plaintiff to plead responsively is denied.

### III

In its second motion, Defendant Practical Engineers argues that Plaintiff's objections to Interrogatories No. 7, 12, 15, and 16 should be overruled, and that the Court should compel Plaintiff to more fully answer those interrogatories.

Under Rule 26(b) of the Federal Rules of Civil Procedure, "the scope of discovery is as follows: Parties may obtain discovery regarding any privileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

Rule 37 allows a party to file a motion to compel discovery if another party fails to make disclosures or provides evasive answers. Fed. R. Civ. P. 37(a)(3)-(4).

The four interrogatories at issue concern the extent to which architectural plans are protected by copyright law. To establish a cause of action for copyright infringement, Plaintiff must: (1) "identify[] which aspects of the artist's work, if any are protectible by copyright"; and (2) "determin[e] whether the allegedly infringing work is 'substantially similar' to the protectible elements of the artist's work." *Stromback v. New Line Cinema*, 284 F.3d 283, 294 (6th Cir. 2004). Defendant Practical Engineers argues that Plaintiff must specifically identify each individual element of the architectural plans that is protectable to meet these requirements.

Contrary to Defendant's assertions, Plaintiff has adequately identified the protectable aspects of its architectural plans in its answers to Defendant's interrogatories. Plaintiff states in its answers that each of its plans is original, and therefore protectable, when viewed as a whole. *See* Pl.'s Answer to Interrogatories 7, 12, and 16. In addition, Plaintiff lists more than two pages of substantially similar elements that would be protectable in its answer to Interrogatory 7. Def.'s Mot., Ex. A at 8-11.

In response, Defendant states that "[t]he concept of an 'overall form,' cannot be protected by copyright law." Contrary to Defendant's assertion, caselaw has consistently concluded that the overall form of architectural plans can be protected.

**A**

Protected works include "any work which by the most generous standard may arguably be said to evince creativity." 1 – 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.08 (2012). To qualify for copyright protection, a work must be original; it must possess "at least some minimal degree of creativity." *Feist Publ'ns v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). The work need not be "particularly novel or unusual." *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004). "[T]he requisite level of creativity

is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist*, 499 U.S. at 345 (citation and internal quotation marks omitted).

As to what is protectable in this case, "architectural works, as their own subject matter category under the Copyright Act, are unique." *Frank Betz Associates, Inc. v. Signature Homes, Inc.*, 2010 WL 137268, *3 (M.D. Tenn. Mar. 29, 2010). The Copyright Act explicitly provides that copyright protection extends to "architectural works." 17 U.S.C. § 102(a)(8). An "architectural work" is defined to include "the *overall form*, as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id*. at § 101 (emphasis added). Architectural plans, as a whole, can constitute an original, protectable work.

Furthermore, as to whether design elements of each living unit are functionally required and therefore not protected, "although the component parts of a house, as captured in a house plan, perform certain functions, the overall design and arrangement of those component parts is not functionally required." *Signature Homes*, 2010 WL 1373268, at *4. "Just as someone using a kaleidoscope mixes standard colors into a new pattern, there are certain common features that go into a house design—a kitchen, bathroom, bedrooms—and the designer moves each of those elements into an original, potentially protectible arrangement." *Id*.

As a last effort, Defendant attempts to categorize the individual elements of the architectural plans as *scenes a faire* and therefore unprotectable. The Sixth Circuit characterized *scenes a faire* as "those elements that follow naturally from the work's theme, rather than the author's creativity . . . or elements that are 'dictated by external factors such as particular

business practices.' " *Kohus v. Mariol*, 328 F.3d 848, 856 (6th Cir. 2003) (quoting 4 *Melville B. Nimmer & David Nimmer, Nimmer on Copyright* § 13.03[F][3]).

The *scenes a faire* doctrine does not prevent the overall form of architectural plans from being protected. Although there are certain elements present in every residential building, the originality of an architectural work is in the "overall look and feel" of the design:

> Unlike with literary works, for example, where there are innumerable ways to craft a story, architects are subject to zoning requirements and a myriad of other restrictions in the manner in which they craft their "art." Moreover, to create a functional and desirable dwelling, certain features must be present. Given these limitations, an architect simply cannot avoid using common architectural features in designing a dwelling. However, the originality of an architectural work lies not in the mere use of any individual feature or group of features, but in the manner in which those features are arranged. Thus, an architectural plan or work that utilizes features common in the building industry can nonetheless constitute an original, protectible expression.

*Chirco v. Rosewood Vill. LLC*, 2005 WL 4785609 (E.D. Mich. Mar. 22, 2005), *report and recommendation adopted in part, rejected in part on other grounds*, 2006 WL 2811266 (E.D. Mich. Sept. 28, 2006).

In sum, the terms of the Copyright Act itself and ample caselaw illustrates that the overall form of architectural plans can be protectable under copyright law.

**B**

The conclusion that the overall form of architectural plans can be protectable is consistent with the conclusion reached in the parties prior litigation in this Court.

In addition, the parties' own prior litigation in this Court affirms that the overall form of architectural plans can be protected by copyright law. The architectural plan at issue in this case, Reg. No. VA 1 688-432, was also at issue in Plaintiff Dorchen/Martin Associates' 2011 copyright infringement action. *See* Case No. 11-cv-10561.

In the 2011 action, Dorchen/Martin Associates sued The Brook of Cheyboygan, Inc. and Practical Engineers, Inc. for copyright infringement of architectural plans. Almost two years after the original complaint was filed and only three months before the scheduled trial, Dorchen/Martin Associates attempted to amend its complaint to include the present Defendants as parties. Mot. Amend Compl., ECF. No. 71. Dorchen/Martin argued that the present Defendants infringed the same '432 copyright and should therefore be joined in the 2011 litigation. Mot. Amend Compl. 6. The Court denied the motion to amend because Dorchen/Martin had "failed to show how it exerted proper diligence" when it did not include the present Defendants from day one. Op. & Order Denying Pl.'s Mot. to File Second Am. Compl. 6, ECF. No. 74. But for the timing of Dorchen/Martin's attempted amendment, the Defendants could have been parties in the original 2011 suit.

In the opinions issued in the 2011 suit, the Court held that the overall form of the architectural plans was protected by the '432 copyright. Dorchen/Martin Associates obtained the '432 copyright on an architectural plan which, "*in its entirety*, was Plaintiff's own creation." Order Denying Mot. Summ. J. 10, ECF No. 58 (emphasis added). The Court also concluded that the '432 copyright is valid and enforceable, and that Dorchen/Martin Associates "is entitled to the protection of its own work." Order Denying Mot. Summ. J. 10-11.

Previous litigation between the parties in this Court illustrates that the overall form of an architectural plan may be copyrighted, not just the individual elements.

**C**

All of Defendant's objections to Plaintiff's responses stem from the erroneous contention that the overall form of architectural plans cannot be copyrighted. Despite Plaintiff's repeated assertions that "the collection of individual elements" is protected by copyright, Defendant

continues to demand disclosure of "*each and every* one of the allegedly original elements in the work . . . ." Plaintiff, however, is not required to state each and every original element because it is asserting that the overall arrangement of the functional spaces is protected. Therefore, Plaintiff has provided a complete, non-evasive answer to Defendant's interrogatories as required by Rule 37(a)(4).

IV

Accordingly, it is **ORDERED** that Defendants' motion to strike Plaintiff's response to Defendants' counterclaim, ECF No. 20, is **DENIED**.

It is further **ORDERED** that Defendant Practical Engineers' motion to compel answers to interrogatories, ECF No. 24, is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 24, 2013

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 24, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS